IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

| | |
|---|---|
| **VERLIN CLOWER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 1:04-0708** |
| ) | |
| **JO ANNE B. BARNHART,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. By Standing Order, this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' Cross-Motions for Judgment on the Pleadings.

The Plaintiff, Verlin Clower (hereinafter referred to as "Claimant"), filed an application for SSI on October 15, 2001 (protective filing date), alleging disability as of June 8, 2000, due to shortness of breath, back, joints, weakness, balance problems, numbness, and headaches. (Tr. at 103-115, 130, 40.) The claims were denied initially and upon reconsideration. (Tr. at 40-44, 47-49.) On November 8, 2002, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 50.) The hearing was held on February 13, 2003, before the Honorable Karen B. Peters. (Tr. at 420-68.) The ALJ issued a decision determining that Claimant was not entitled to benefits, but the decision was remanded by the Appeals Council for further consideration and clarification regarding

Claimant's residual functional capacity ("RFC"). (Tr. at 68-71.) A second hearing was held on October 24, 2003. (Tr. at 390-419.) By decision dated March 26, 2004, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 15-31.) The ALJ's decision became the final decision of the Commissioner on May 19, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 9-12.) On July 12, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall

v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 20.) Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of a back disorder, chronic obstructive pulmonary disease ("COPD"), and carpal tunnel syndrome. (Tr. at 24.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 24.) The ALJ then found that Claimant had a residual functional capacity to perform sedentary work with additional limitations, including a sit/stand option, limited use of the right lower extremity for pushing and pulling; occasional reduction of the use of the right upper extremity; only occasional performance of postural activities; mild reduction in concentration and no exposure to dust, fumes, or temperature changes. (Tr. at 26.) The ALJ therefore determined that Claimant could not perform his past relevant work. (Tr. at 27.) Nonetheless, the ALJ determined, on the basis of Vocational Expert testimony, that Claimant could perform sedentary jobs such as general office clerk and information clerk, which exist in significant numbers in the national economy. (Tr. at 28-29.) On this basis, benefits were denied. (Tr. at 28-29.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals that the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on July 7, 1955, and was 48 years old at the time of the second administrative hearing. (Tr. at 103, 410.) Claimant completed the ninth grade and later received a G.E.D. (Tr. at 141, 301.) In the past, he worked as a mechanic. (Tr. at 136.)

The Medical Record

The Court has reviewed all evidence of record, including the medical evidence, and will discuss it below as it relates to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence

because the ALJ erred in: (1) failing to properly evaluate the medical source opinion of Ms. McFadden; and (2) assessing Claimant's credibility. The Commissioner asserts that these arguments are without merit and that the decision is supported by substantial evidence.

1. Examining Source Opinion

Claimant first asserts that the ALJ erred in evaluating and giving "very little weight" to the opinion of Tonya McFadden, M.A., licensed psychologist. (Pl.'s Br. at 5.) The Commissioner asserts that this argument is without merit.

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. § 416.927(d). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency (5) specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. § 416.927(d)(2).

Under § 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Section 416.927(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Section 416.927(d)(2)(i) states that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under § 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to

an opinion by a specialist about issues in his/her area of specialty).

The ALJ concluded, after consideration of the entire record, that Claimant did not have a severe mental impairment. (Tr. at 25.) In making this determination, the ALJ noted the evaluation by and opinion of psychologist Tonya McFadden. (Tr. at 24-25.) Ms. McFadden conducted a psychological evaluation of the Claimant on September 3, 2002. (Tr. at 299-306.) Ms. McFadden had not previously treated the Claimant and he was "seen in connection with his claim for disability benefits." (Tr. at 299.) Claimant reported that he developed emotional problems following surgery in 2000. (Tr. at 299.) Claimant was alert and oriented in all spheres and was pleasant and cooperative. (Tr. at 302.) He presented with depressed mood but no evidence of distorted thought process, delusions, or hallucinations. (Tr. at 302.) Claimant's concentration was good. (Tr. at 302.) Ms. McFadden stated that results of the MMPI-II personality test revealed that "classical conversion symptoms may be present." (Tr. at 303.) She noted that he "may experience tension and continue functioning, but at a reduced level of efficiency." (Tr. at 304.) Diagnosis was: (1) adjustment disorder with mixed anxiety and depressed mood and (2) conversion disorder (provisional). (Tr. at 305.) Ms. McFadden opined that the psychological impairments Claimant "described" "appear to be a contributing factor to his disability." (Tr. at 306.) She further opined that due to his difficulties coping with stressors, he would be "anticipated to have significant difficulties dealing with the ususal pressures encountered in competitive work." (Tr. at 306.)

The Court finds that the ALJ properly evaluated Ms. McFadden's opinion in accordance with the applicable law and Regulations and that her determination to accord the opinion "little weight" is supported by substantial evidence. The Claimant takes issue with the ALJ's reasoning, but fails to recognize that the ALJ simply considered the factors set forth in the Regulations. First, the ALJ noted that the evaluation was a one-time examination and that Ms. McFadden did not have a treating

relationship with Claimant. The ALJ also noted that Claimant saw Ms. McFadden at the request of his attorney for the purpose of establishing disability. (Tr. at 24-25.) Although Claimant takes great issue with this statement, it is clear that this was not the entire basis for the ALJ's rejection of the opinion. Next, the ALJ noted that Ms. McFadden, who is not a doctor, but holds a masters degree, did not rely on any mental behavior history or functional limitations. (Tr. at 25.) This goes to the supportability of the opinion and the specialization of Ms. McFadden. Further, the ALJ noted that Claimant has not required any previous mental health treatment and that Ms. McFadden based her opinions on subjective complaints. (Tr. at 25.) Indeed, Ms. McFadden noted that the psychological limitations Claimant "described" "appear to be a contributing factor to his disability." (Tr. at 306.) The ALJ also noted that Ms. McFadden did not perform any drug testing on the Claimant, who appears to have some issues with drugs, especially marijuana and narcotic pain medication. (Tr. at 25, 18-31, 289-90.)

Additionally, with regard to the consistency of the report with the entire record, the ALJ noted that Claimant had not sought mental health treatment and did not report depression or anxiety as an impairment at the time of filing his application for benefits. (Tr. at 25.) She noted that although Claimant sought treatment from Dr. Bendy and was prescribed Xanax, Dr. Bendy was a general practitioner and apparently saw no need to refer claimant for additional mental health treatment and had not adjusted the medication. (Tr. at 24.) As the Commissioner notes, Dr. Bendy's treatment notes do not indicate limitations. (Tr. at 379-88.) Further, a state agency physician who reviewed the record determined that Claimant had no severe mental impairment and found only mild restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. (Tr. at 315-28.) The Regulations provide that state agency medical and

psychological consultants are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation" whose opinions must be considered as opinion evidence. 20 C.F.R. § 404.1527(f)(2)(i) (2004). The conclusions of the state agency physician thus support the ALJ's determination regarding Claimant's mental impairment.

The ALJ followed the requirements of the Regulations and applied the pertinent factors in determining to give little weight to Ms. McFadden's opinion. Ms. McFadden submitted no medical source statement regarding Claimant's abilities or his limitations caused by any mental impairments. Additionally, her opinion was merely that of "anticipated" difficulties dealing with the usual pressures of competitive work. The Court finds that the ALJ properly evaluated Ms. McFadden's opinion in accordance with the applicable law and Regulations and that her determination to accord the opinion "little weight" is supported by substantial evidence.

2. Credibility Determination

Claimant next argues that the ALJ erred in evaluating his credibility, particularly in disregarding his testimony that he had a disc in his back pressing on a nerve and causing pain. The Commissioner asserts that this argument is without merit.

Social Security Ruling 96-7p clarifies when the evaluation of symptoms, under 20 C.F.R. §§ 404.1529 and 416.929, requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; explains the factors to be considered in assessing the credibility of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the credibility of the individual's statements. The Ruling further directs that factors in evaluating the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record. This includes, but is not limited

to:

- The medical signs and laboratory findings;

- Diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and

- Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

The ALJ must accompany his decision with sufficient explanation to allow a reviewing court to determine whether the Commissioner's decision is supported by substantial evidence. "[T]he [Commissioner] is required by both the Social Security Act, 42 U.S.C. § 405(b), and the Administrative Procedure Act, 5 U.S.C. § 557(c), to include in the text of [his] decision a statement of the reasons for that decision." Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986). The ALJ's "decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge . . . ." Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985).

In her decision, the ALJ noted Claimant's testimony at the administrative hearing, including his allegation that he had a L5 disc pressing on a nerve in his back and had received epidural injections but continued to experience pain. (Tr. at 20.) The ALJ concluded that Claimant's statements regarding his impairments and their alleged impact on his ability to work were "not established by the medical evidence, his own contemporaneous statements to treating sources, or medical source opinions." (Tr. at 26.) She therefore found Claimant not entirely credible, finding

9

that although he did have some level of pain, it would not preclude him from performing at least sedentary work. (Tr. at 26.)

Claimant asserts that the ALJ "blankly states that there is no clinical evidence that would substantiate Mr. Clower's claims of limitation" regarding the pinched nerve in his back. (Pl.'s Br. at 10.) The ALJ noted that Claimant "has been diagnosed with degenerative disc disease, radiculopathy, and spinal stenosis, and he has received treatment from several doctors for these problems." (Tr. at 26.) She further states, "[h]e has also been told that he has pain because of a nerve pressing up against one of his disc [sic] in his lower back." (Tr. at 26.) She noted Claimant's treatment in 2002 with Dr. Razzaq, a neurologist, who after six months of treatment stated that Claimant did not need to return for follow-up. (Tr. at 26, 349.) On his initial examination with Dr. Razzaq, the doctor noted that Claimant limped while walking but "otherwise has normal neurologic exam." (Tr. at 298.) A lumbar MRI showed multiple levels of encroachment on the dural sac; marked bulging at L2-3 and L3-4, and partial disc herniation on the right at L5-S1, but no encroachment on the right S1 nerve root. (Tr. at 296.)

Claimant was referred to neurosurgeon Dr. Koja, who found positive straight leg raising on the right, but no sign of weakness in the extremities. (Tr. at 340-43.) During the initial visit in July 2002, Dr. Koja diagnosed degenerative joint disease and spondylolisthesis at the L5-S1 level and advised Claimant to undergo two epidural blocks. (Tr. at 341.) Claimant returned on November 20, 2002 following a car accident. (Tr. at 342.) Claimant had not undergone the epidural blocks recommended several months before. (Tr. at 342.) Findings on examination were essentially the same as before and Dr. Koja again recommended the epidural blocks, which Claimant received. (Tr. at 342-43, 358-66.) The ALJ noted that following the epidural blocks, Claimant began seeing Dr. Bendy, who continued to prescribe various medications for at least nine months. (Tr. at 26, 379-88.)

The ALJ noted that the record indicated that Claimant was not seeking further treatment and had not been referred to any other specialists. (Tr. at 26.) Additionally, she noted that Claimant performed various daily activities, including mowing the lawn and other yard work, preparing meals, performing household chores, grocery shopping, and child care. (Tr. at 26, 152-58.) Claimant indicated on one form that he left the house daily just to go out riding in the car or to go to the store. (Tr. at 156.) The ALJ further found evidence in the record that Claimant was seeing physicians "primarily to obtain narcotic medication." (Tr. at 27.) The ALJ noted that in April 2002, Dr. Novikoff stated that Claimant had used a minimum of 150 Lortabs in 18-19 days. (Tr. at 290.) Dr. Novikoff refused to provide further prescriptions and offered referral for drug treatment, which Claimant refused. (Tr. at 289-90.) Dr. Novikoff also noted that Claimant asked him to write a letter for purposes of Claimant receiving disability. (Tr. at 289.) Dr. Novikoff stated that there was "no basis to put him on disability at this time . . . ."(Tr. at 289.)

The ALJ did not find that Claimant had no back problems; in fact, she noted his treatment and diagnoses. (Tr. at 26.) Additionally, she credited his complaints to some extent by limiting him to a RFC of sedentary work with additional limitations, including a sit/stand option. (Tr. at 25-26.) The ALJ properly evaluated Claimant's credibility in accordance with the requirements of the applicable law and Regulations.  Claimant's argument is therefore without merit.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings, **GRANT** the Defendant's Motion for Judgment on the Pleadings,  **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Chief United States District Judge.

11

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Chief Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

Date: July 12, 2005.

R. Clarke VanDervort
United States Magistrate Judge